The next matter on our calendar is E.D. Capital v. Bloomfield Investments. Good morning, Your Honor. May it please the Court, Richard Lomuccio on behalf of Plaintiffs' E.D. Capital and E.D. Capital Management. I'm here with my colleague, Andrew Van Howder. Your Honors, this appeal involves the dismissal, for lack of standing, of a complaint on the grounds that E.D. Capital was not seeking to enforce its own rights. This, though, is belied by the clear and well-plaid allegations of the complaint here. In the complaint, E.D. Capital was seeking to enforce its own rights. The complaint is a direct violation of the contractual and tort violations that were committed by the defendants here. They were not derivative, you claim? They are not derivative, Your Honor. If you look at the complaint, the contractual allegations indicate obligations that Bloomfield had to E.D. Capital as manager and investment advisor of the Synergy Funds. And if you look at each—if you look at the agreements, which the court below did not do, the—Bloomfield agreed that it would defer to E.D. Capital in connection with investment decisions. It also agreed that it would maintain the confidentiality of the memorandum and subscription agreement. It also agreed to provide indemnity to—directly to the managers here at E.D. Capital. In addition, the— Indemnity for what? In connection with their conduct with regard to whether or not the agreement itself represented investment and detailed investment. You're saying that E.D. Capital is a third-party beneficiary of that contract because there are obligations which the defendant undertakes as part of the contract that run explicitly to E.D. Capital. That's correct, Your Honor. And that is—was, again, an issue that was not considered by the district court in deciding that there was no standing here with regard to E.D. Capital. Where was that pled in your complaint? What particular obligations did the defendant undertake with respect to E.D. Capital, looking at E.D. Capital as a third-party beneficiary and under which agreements? Sure. Just to give you a couple of examples from the complaint, Your Honor, and I'll give you the record sets as well. With regard to investment obligations, if you look at the complaint, paragraph 14, A14 of the record, with regard to— I'm sorry. We're looking at A14. A14 of the record. The agreement to make an investment. The agreement and— That ran directly to the investment manager as a third-party beneficiary? Yes. The obligation was to defer to E.D. Capital's investment decisions with regard to the matter in the funds. In addition— How is that breached? How is that— I don't understand. Sure. It's breached by—if you look at, for example, in A215 of the record, it's breached by the fact that Bloomfield was attempting to alter and infuse its own investment decisions with regard to the funds as opposed to deferring to E.D. Capital. But why is that an obligation to E.D. Capital? If I make a deal with you and I say—and you're going to, I don't know, invest some money with me, and I say, well, as far as what we're going to do with the money, take your instructions from my agent, my employee, my broker. And the other side doesn't do that. Why is the broker or agent harmed by that? Why is that an obligation? I'm the one that is entitled to have you act according to the instructions of my agent. The agent doesn't—there's not an obligation—the agent isn't a beneficiary of that in any way, is it? I'm the one that's hurt if you use the money not in the way that my agent tells you to. There is injury here with regard to investment because it's an obligation and it's breached as to—they agreed to defer to E.D. Capital's investment strategy. Regardless of that, even if you say, oh, there's not a breach of contract with regard to the investment piece of it, there are direct obligations in the subscription agreement memorandum. Okay, so you're retreating from this one or you just want to realize something else? I'm trying to—you have to do them piece by piece. Yeah, sure. No, I understand. I understand. I appreciate that. I'm saying, if I say, listen to my attorney about what we should do with this money, and you don't follow his instructions, how is the attorney hurt? It's my money. It's my investment. You promised me that you would do what my man tells you. It's different here, Your Honor, in the sense that E.D. Capital is a direct—Bloomfield has a direct obligation to defer to E.D. Capital's decision regarding investment. I hear that, but why does that make, in my example, my attorney a third-party beneficiary? I didn't do this for his benefit. It's my money. I want it spent in certain ways, and I'm delegating to him the authority to give you instructions. I don't do that for his It's no skin off his nose. It's my money that you're now misusing, not according to the contract. What am I missing? What you're missing, Your Honor, is, again, the focus here is on the breach, and there's an obligation—it's not the situation where you're talking about where there's a third-party. The party here, E.D. Capital, is specifically referenced in the agreements. But it's not a party to the agreements. No, it's not a party to the agreements. And you have to show, under the law of the Cayman Islands, that you are an intended third-party beneficiary, that all the parties expected to be able to act on any perceived breach that ran to you directly. Yes, Your Honor. And we would be able to show that. We're not given that opportunity to show that below. That's what I also didn't really see very clearly pled in your complaint. I mean, there's a general account about indemnification. There's a reference to breach of confidentiality. And the confidentiality count seemed—or it's not even really a count. But that obligation seemed to be more clearly set out in the subscription agreement than pretty much any other one. Although, even that, it wasn't clear to me what confidential material of your client as an investment manager had been published and to what damage. Could you just explain that aspect? Sure. There are two responses, Your Honor. First off, the provision itself indicates that the parties agree that there is damage as a result of disclosure. You're saying the contracts— Yes. What was the publication? The publication of it was the filing of it in connection with the proceedings— What's the it? The filing of what? I'm sorry. The filing of the subscription agreement and the memorandum in the Dutch court in the Dutch action brought by Bloomfield. Is that confidential information of ED Capitals rather than of its client? It's of ED Capital and of the funds that it manages. So that's the Synergy Funds. And then the obligation, if you look at the confidentiality obligation in the agreement, they agreed, Bloomfield agreed, not to produce any of the confidential information, which are the subscription agreement and memorandum, without the prior consent of ED Capital. You're the one that has to give consent, but that doesn't mean it's your property or you're the one who's injured or that this whole obligation is created for your benefit. We have somebody who's got a lot of money, right, who's making an investment. And just as they said, follow the instructions of ED Capital, they also say, don't disclose—you promise not to disclose any of my confidential information. It doesn't say, watch out now. We're making this agreement not for my sake, but for ED Capital's sake. You promise not to disclose any of their confidential information, and if you do, you're responsible because we're doing this for him. Where is that? It seems to me still that we're talking about obligations that Synergy wants to put in this contract for its benefit. Again, Your Honor, the contract itself speaks as to obligations that Bloomfield has to ED Capital in terms of confidentiality and harm that ED Capital will suffer as a manager in the disclosure, in connection with the disclosure of that confidential— We don't have to debate this in any way. Just point me to where in the agreement that confidentiality agreement is said to run to ED Capital, just so I can— Sure, sure, no problem. It's the subscription agreement, which is—it's paragraph 22 of the subscription agreement, and it's referenced in the complaint at A30 of the record. But do we have the actual language of that agreement somewhere in the appendix? Yes, yes, you do, Your Honor. Give me one moment, please. A65. A65. Thank you. Thank you. Thank you, Counselor. You have reserved two minutes for rebuttal? Yes, I have, Your Honor. Thank you. We'll hear from Bloomfield. Good morning, Your Honors. Stephen Cooper, Reed Smith for the apolice, here with Rachel Markosha. Your Honors, this is a very forced, tortured case. Let me give you just a few minutes of context here. As you know from the record, there is an action pending in the Netherlands with regard to the very money at issue here. There was a question about an attachment. There was money attached, and Synergy and ED Capital needed to make a bond payment. They went to the Netherlands court, they got a partial lifting of the attachment, and they were able to make their bond payment. When the next bond payment came due, they wrote to us, there was correspondence, and rather than fully vet this or go back to the Netherlands, who had given them relief before, they ran to court here. I got a call as counsel was going to get a TRO to enjoin those proceedings to get the attachment released in the Netherlands, essentially an anti-suit injunction, which now they're not even appealing. The claim was there was going to be a death spiral, and ED Capital and Synergy was going to go into bankruptcy. None of that has happened. So what you have here- Did they make the December bond payment? Not as far as I know. No. But if you read the transcript and if you read the allegations and the briefs below, the cries of hysteria and the sky is falling are everywhere. But more importantly, what's germane today is that this is a situation where you have a contract, a subscription agreement, between the Synergy funds and Bloomfield. There is a separate manager advisor, which is very common in these situations, and they have brought the claim. Now, one immediate question is, why didn't Synergy bring the claim? Why did ED Capital bring the claim in this case? Because they are removed. They are derivatively damaged. And I believe the answer is pretty simple. If you look at the allegations and the complaint, all of the parties that we represent are aliens. Synergy is a Cayman Islands fund. The only possible hook they had here was to bring it on behalf of ED Capital, which has offices on 3rd Avenue. So what they did is- Some of the obligations in the subscription agreement do seem to run to the investment manager, including the confidential information indemnification. Isn't that right? Yes, Your Honor. Okay, we can all agree they're not contracting parties. So now they're on to a third-party beneficiary argument, which, frankly, is somewhat newly minted. It was a footnote in their brief, and then it was expounded upon in their reply. First off, as you noted earlier, this is cited under Cayman law. There is no Cayman law on the record. There was one cite in the reply. We did not get notice under 44-1, so it's inappropriate. We had absolutely no opportunity to respond to it. We don't know what the law is. The Extraordinary Gazette? Yes, yes, which I found to be a very interesting title. So we're starting with the premise that we don't have any law on this. And more than that, if you do look at the American law, assuming that it is somewhat comparable and analogous, it's not as simple as referencing ED Capital or referencing the advisor. In fact, the main claim they make is it's been mentioned dozens of times. That's not enough. The cases we cite, the coalition for 9-11 case, talk about clear, direct language that sets out who the third-party beneficiaries are. Now keep in mind, this is a structure they put together. This is a structure they wanted. They wanted to separate out the advisor and the manager from the funds. They wanted to have them in different jurisdictions. I assure you, if we, Bloomfield, sued ED Capital, we would be told there's no privity there, there's no relationship there whatsoever. I assure you that. So this is their construct. And now they come to the court, and they act as if they're all one and the same, and they're third-party beneficiaries. All they were referenced. And there's a separate advisory agreement right after the pages that were cited in the brief. It references a separate advisory agreement, which dictates the relationship between the funds and the advisors. If the advisors have a claim, they have it with the funds. But what about the abuse of process claim? I think they're arguing that you served harassing discovery requests, and that was abuse of process. A couple of responses on that. First of all, all of these tort claims are, if you cut through the language, they are all derivative claims. They were all based on some theory that bringing the case in the Netherlands was somehow a violation of their. Detentional damage is not a derivative claim. Well, Your Honor, there was really nothing pled on it. I mean, I agree with you, but Judge Marrero below looked at that in connection with the irreparable harm and said there was nothing pled here. And just saying it is not enough. You need to show something significant. With a prima facie tort, you need to show special damages. With the abuse of process claim, Your Honor, that was a result of a Southern District of New York 1782 proceeding where that discovery was ordered by the special term Judge Abrams. Later, it became a related case before Judge Marrero where he compelled discovery. This is legally sanctioned discovery. If they had a beef with the discovery. Mr. Cooper, the basic problem I have, and I'd like you to comment on this, you are now explaining to me why all these claims are bogus, which is different than explaining why these claims do not belong to ED Capital. If ED Capital says you abuse process by inflicting unreasonable discovery demands on us, it doesn't sound like it's going to go very far to me, but I'm just guessing. That's the merits. They're the ones who are having the discovery demands put on them. If they say you disclosed our confidential information and we're a third-party beneficiary of this contract, well, maybe they aren't. Maybe that's not a claim that's going to stand up even on a 12B6 motion, but that's not what the district court said. The district court said that's not their claim. But it is their claim. If they're claiming to be a third-party beneficiary, it may be not legally sufficient or it may stand up on a motion to dismiss, but you may eventually show that that's not a viable claim for trial and so on. But those all seem to be merits arguments. Am I wrong about that? Well, my point would be this, and Judge Marrero made this point. Look, this was a 12B1 decision below. It was not a 12B6. But I do think there is an area where they do overlap. And the point the judge was making is none of these claims, if you look at the injury, directly went to ED Capital. It was all derivative of what happened below. And the essence of the claim was— It may be derivative, but they're saying our reputation was damaged by this. They're saying we spent money on attorney's fees in responding to these discovery complaints. And these are all, again, whether they're valid claims or not in the end, whose claims are they? Who's being damaged? That's not Synergy's damage that ED's reputation is harmed, right? Yes, Your Honor. But, again, if you look at who had the relationship, who had the privity, who had the direct damage, it's all Synergy. Simply saying our reputation is damaged is derivative. It means the funds—you sued the funds. Therefore, our management fees aren't going to be paid. Our reputation is going to be hurt. We did not sue ED Capital. They're not a party in any of the actions. The gravamen of this whole thing is we're hurt because of that. We're hurt because you got the attachment. How can you argue that reputational damage or failure to get the fees, on which they totally rely, is derivative? It seems it's a direct claim of the ED itself. Your Honor, I would respectfully disagree. The cases we cite, W.R. Huff and Jones v. Niagara, they talk about situations where an investment manager is hurt or trying to act on behalf of the fund or a shareholder. This would be a situation like a shareholder claims he's hurt because something happens with the corporation. They're separate entities. UMG, Synergy, they all have separate officers and directors. The action against Synergy does not create a direct claim against ED Capital. It does not. The management fees are only paid if Synergy is successful. The reputation, as alleged, is only harmed if the attachment is improper. We're making bogus claims about our subscription agreement, and our subscription agreement is with Synergy. So everything is derivative. The relationship here is strictly between Synergy and Bloomfield. So what they're saying, and I believe Judge Morrell was 100% right on this, is if you look at it, it flows from, stems from, we're not going to get paid, our reputation's going to get hurt because the fund's collapsed, because the fund is injured, because the fund is attached. That's what they're saying. All right. And we represent the funds, and there our reputation goes if the funds collapse. That's derivative, Your Honor. That's derivative. It's pretty clear in the law that the adviser wanted to have a direct relationship here. They could have, but they didn't. The adviser is only damaged if somehow monetarily or otherwise the fund is damaged. Nobody sued the adviser. The advisers are ancillary. They're on the side here. But more to the fact, it's exactly what they plead. They plead, and they said, if you look at the transcript, that the damage to ED is a result of the harm to the funds. All right. Thank you. Counsel, you have a few minutes for rebuttal. Respond to the last point made by opposing counsel, that this is by its very nature derivative. It's not, Your Honor, because if you look at the complaint, which Judge Morrell did not do in his decision, we are alleging claims, contract and tort claims. Contract claims, which, as we discussed earlier, stem from Bloomfield's agreement to maintain confidential information, to defer to investment decisions, and to indentify. And the tort claims are torts that are directed at ED Capital. They are not directed at the Synergy Funds. They're not directed at the discovery was issued to ED Capital and the abuse of process claim. Explain how. Explain how. The process that they sought here in New York was directed at the ED Capital entities. It was not directed at the Synergy Funds. And the harm there is they've, you know, that is, you know, that is the issue with the grand jury law. Those 1782, Section 1782 discovery claims may be, in some causal sense, derivative of the litigation in the Netherlands that's about Synergy. But the process that you claim is abusive is a process that was directed. It's directed at ED Capital. It's not directed at the Synergy Funds. And then with regard to just one other point, a lot of the points that my colleague has raised are new. These are issues that were first raised in their reply brief. Below, there was not a pleading motion that Judge Morrell was dealing with other than the standing issue. And on the standing issue, he was incorrect in saying that ED Capital was not seeking to enforce its own rights. If you look at the complaint, it was seeking to enforce its own rights. And that is what the error was. And then finally, I just want to just quote one aspect from the subscription agreement with regard to confidentiality, and it addresses some of the questions raised earlier. I see I'm out of time. Finish your sentence. Thank you. I would just read, and this is at A40 of the record, and it's a quote in the complaint of the subscription agreement. It says, the subscriber acknowledges that the affected parties, which includes ED Capital, drive independent economic value from confidential information not being generally known, and that confidential information is a subject of reasonable efforts to maintain its secrecy. But just to clarify, when we were discussing this earlier, you said that the breach of confidentiality that you thought was actionable was the use in the lawsuit of the subscription agreement, the publication of the very document that we're talking about here as creating your rights, and its use in litigation proceedings to vindicate those rights one way or another in the Netherlands proceeding. So you're saying that it was improper to use that in the lawsuit? I mean, it's something we have to refer to here, right? It's improper. It's the basis of your suit here. It's improper, though, Your Honor, because it's public disclosure of the information. You didn't file these, right? I'm trying to figure out why they're not under seal, if you think they are confidential. Because they've already been disclosed and made public, Your Honor. And that's the issue. It's initial disclosure that would result in – So they should have been filed under seal? They should have been filed in the Netherlands, yes. Thank you, counsel. Thank you. Thank you both. We'll reserve decision.